Iukdey, J.
The petitioners in the present injunction suit claim to be creditors of the succession of Elize Bret, widow of Zepherin Blanchard, who died intestate in the year 1858, leaving (heirs of her body) twelve children, and a succession, consisting of a sugar plantation, slaves, movables, etc.
All her children being above the age of majority, accepted her succession purely and simply, and took possession of her whole estate, without any legal formality.
On the'6th February, 1859, four of the heirs of Widow Zepherin Blanchard sold to the remaining eight, for the consideration of $18,000, part in cash and the balance in installments, represented by notes, payable in 1860, 1861 and 1862 (four notes of $3,333 33>£, each year), all their right, lille, claim and interest, to the said property, real and personal, particularly described in the act of sale ; and the better to secure the full and punctual payment of the said notes, the said property, land, slaves, etc., remained specially mortgaged to the vendors, or any holder of the said notes, and until the full and final payment thereof ; it being, moreover, understood, that the purchasers should pay all the debts of their deceased parents. The object of the plaintiffs’ injunction suit was to arrest proceedings under the defendants’ order of seizure and sale, and to obtain security for their claims, and, in default of such security, to provoke the ax>pointment of an administrator to administer the succession of the Widow Zepherin Blanchard, according to the provisions of the section relative to the benefit of inventory, all in accordance with Article 1005 of the Civil Code.
The defendants moved to dissolve the injunction on the face of the papers, for the grounds stated in the motion, with twenty per cent, damages on the sum enjoined, and special damages, five hundred dollars for attorney’s fees. The defendants in injunction answered ; admitted that they are a part of the heirs of Elize LeBert and Zepherin Blanchard, their father and mother, deceased ; that they accepted the succession left them by their parents purely and simply, and kept the property thereof undivided until they sold their shares to tlieir co-heirs, on the 16th February, 1859 ;
That the plaintiffs acquiesced in the sale, and in the assumption of the purchasers to pay the debts of their deceased parent;
That, if the plaintiffs have any right of action, it is to prosecute against the heirs of Elize LeBert, jointly, under their acceptance pure and simple of her succession, and against each for his virile portion thereof.
The motion and the merits were tried together, and the District Court rendered a judgment in favor of the plaintiffs, and against all the heirs of Elize LeBert, Widow Zepherin Blanchard, for the amount claimed ; recognized the debt as one of the succession of the said widow, dissolved the injunction, and gave judgment in favor of the defendants against the plaintiffs, in the sum of five hundred dollars for attorney’s fees, costs, etc., and from this judgment the plaintiffs have appealed.
The question to be now solved under the pleadings is, whether the ordinary creditors of Elize Bert, Widow Zepherin Blanchard, whose children of lawful age, having accepted her succession purely and simply, and against whom and their creditors, the action of the creditors of the *61 succession, for the separation of the patrimony of the deceased from that of the heirs, is prescribed under Art. 1409 of the Civil Code, have any other than a personal action against the heirs ; and, whether the patrimony of the deceased is to be specially subjected to their claims against the succession, notwithstanding the blending together of the two patrimonies, i.e. that of the succession and those of the heirs ?
Article 1370 of the Civil Code accords to the creditors of a succession three kinds of action, to cause themselves to be paid the debts due them by the deceased, to wit :
1. A personal action against the heirs, or those who stand in the place of the heirs;
2. An hypothecary action against the detainers or possessors of the property mortgaged for their debts ;
3. And the action of the separation of the patrimony of the deceased from that of the heir.
The last of these actions for a separation of patrimony, can only be resorted to within three months from the express or tacit acceptance of the heirs. After the expiration of this term it is not admitted. Article 1409, Civil Code.
“ In the interval between the opening of the succession and the three months allowed for the institution of the suit for the separation of patrimony, the heir cannot alienate, affect nor sell the effects of the succession, nor any of them, to the prejudice of the creditors ; and if he does it, the creditors may cause the acts to be declared null, as done in fraud of their right. It is the reverse, after the expiration of the three months. ” See 1141 C. C.
The filing in Court of the plaintiffs’ injunction suit, which virtually claimed a separation of patrimony, was long subsequent to the expiration of the delay, computing it from the date of the tacit acceptance of the succession of Mrs. Zeplierin Blanchard by the heirs. See 982 and 986, Civil Code.
Article 1005 of the Civil Code is in harmony with the articles thereof specially applicable to the payment of the debts of a succession. The remedy awarded by the former article lasts as long as does the action of the separation of patrimony, and no longer, otherwise there would be no limit to the exercise of the action “ of the separation of patrimony.”
The plaintiffs being mere ordinary creditors of the succession, their action was, when they instituted it, a mere personal one against each of the heirs, to recover from him his virile share of his ancestor’s debt, and they stand upon the same footing as do the creditors of the heirs.
Marcadé, commenting on the Articles of the Napoleon Code, in regard to the separation of patrimony, explains the legal effect produced by the blending of the two patrimonies—-that of the deceased with that of the heir, and also the effect which the law attaches to the separation of these patrimonies.
He observes : ‘1 Nous avons vu sous l’art. 802, que l’héritier (tout en acceptant cette qualité pour en invoquer le bénéfice, s’il y a lieu) peut suspendre actuellement les effets ordinaires de l’acceptation, c’est-a-dire la transformation légale en celle du défunt, et la confusion qui en resulte entre les deux patrimoines; en sorte que les deux masses de biens restent *62 séparées, tout comme si le défunt vivait encore. Or, ce droit aceordé a l’Iiéritier de maintenír séparés l’un de l’autre les deux patrimoines, est également attribué aux créanciers par notre article 878, et il est étundu aux légataires par Particle 2111. Ainsi, de méme que Phéritier pent obtenir la séparation des patrimoines, quand il craint que la succession ne lui apporte plus de dettes que de biens; de méme les créanciers et légataires peuvent la demander aussi, quand ils craignent que l’héritier n’ait plus de passif que d’actif, et que la confusion des deux patrimoines en un ne diminue la somme qu’ils doívent recevoir sur les biens laissés parle défunt.—Ainsi, quand le défunt laisse 60,OOOf. de biens et50,0QQf. de dettes, et que Phéritier, au contraire, n’a que 20, OOOf. d’aetif pour un passif de 50,OOOf. également, la confusion des patrimoines ne donnerait ti tous les créanciers, soit de la succession, soit de Phéritier, que 80 pour cent; tendis que la séparation de ces patrimoines donnera aux créanciers héréditaires un actif plus que suffisant pour l’acquittement intégral de leurs créanees. Si nous supposons qu’avec 50, OOOf. de dettes le défunt ne laisse qu.e 30, OOOf. de biens, la séparation sera encore utile aux créanciers héréditaires puisqu’elle leur assurera 60 pour cent; tandis que la confusion produirait un actif total de 50,000f., pour un passif total de 100,000f., c’est-a-dire, 50 seulement pour cent. Yol. 3, p. 276, $ 391.
It results from the examples put with such pertinence by the learned commentator that the mingling together of patrimonies, places the ordinary creditors of the succession, and of the heir, upon an equal footing. ‘ ‘Il est vrai qu’il y a désormais confusion des patrimoines, en sorte que tous sont tombés au rang des créanciers personnels de l’heritier : il n’y' a plus qu’une seule masse de biens, qu’un seul débiteur qu’une seule classe de créanciers,” 397, ib. En un mot, il n’y aura alors qu’une seulo classe de créanciers ayant tous le méme débiteur, et parmi tous ces créanciers, on appellera, comme en toute autre circonstance; 1. Les priviligiés, s’il y en a: 2. Les hypothécaires; 3. Enfin les créanciers chirographaires, ib. | 397.
As mere ordinary creditors of the heirs of Widow Zepherin Blanchard, the plaintiffs had no legal right to stay by injunction the proceedings under the defendants’ order of seizure and sale, although the property seized had been the patrimony of the plaintiff’s debtor, the defendants’ mother.
Even privilege or mortgage creditors cannot arrest executions, but must resort to the remedy of third opposition to stay the proceeds of sale in the sheriff’s hands, until the conflicting rights of preference to the fund can be determined.
The plea of prescription of five years is urged against the plaintiffs’ action on the notes sued on. It is shown that interest was paid on the note for $2,420, held by William White, administrator up to the 3d March, 1862, and on the note for $550, held by his co-plaintiff, up to the 6th March, 1860.
The first note was not prescribed, but we find nothing in the evidence to show that prescription was suspended as to the note on which interest was paid, on the 6th March, 1860, and as service of,process in this case was only made on the 3d January, 1866, more than five years had *63 elapsed between the date of the interruption and that on which service of process was made on the defendants.
In this particular, the judgment of the lower Court must be reversed.
It is therefore ordered, adjudged and decreed, that the judgment of the District Court, so far as it condemns the defendants, the four children and heirs of Widow Zepherin Blanchard, to pay the plaintiffs, Joachin Aillet, the note for five hundred and fifty dollars, with interest, etc., be and the same is hereby annulled and reversed; and it is further ordered, adjudged and decreed that, as regards the said note, judgment be rendered in favor of the defendants.
It is further ordered, adjudged and decreed, that in every other particular, the judgment of the lower Court be and the same is hereby affirmed, at the costs of the appellant.